UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case Nos. 25-CR-155
26-CR-75

ANKURKUMAR BHANUBHAI PATEL,

Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorney, Peter J. Smyczek, Assistant United States Attorney for the Eastern District of Wisconsin, and the defendant, Ankurkumar Bhanubhai Patel, individually and by attorneys Nicole Masnica and Patrick Campbell, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement with respect to both of the above-captioned matters:

### CHARGES

2.      The defendant has been charged in a two-count indictment in Case No. 25-CR-155, which alleges Money Laundering Conspiracy and Unlawful Financial Transaction, in violation of Title 18, United States Code, Sections 1956(h) and 1957, respectively.

3.      The defendant has also been charged in a three-count indictment in Case No. 26-CR-75, which alleges one count of Conspiracy to Commit Wire Fraud and two counts of substantive Wire Fraud, in violation of Title 18, United States Code, Sections 1349 and 1343, respectively.

4. The defendant has read and fully understands the charges contained in both indictments. He fully understands the nature and elements of the crimes with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

5. The defendant voluntarily agrees to plead guilty to Count One of the Indictment in Case No. 25-CR-155, set forth, in relevant part, as follows:

### COUNT ONE
(Money Laundering Conspiracy)

**THE GRAND JURY FURHTER CHARGES THAT:**

7. Beginning by at least June 2023, and continuing through at least September 2023, in the State and Eastern District of Wisconsin and elsewhere,

**ANKURKUMAR BHANUBHAI PATEL**

knowingly combined, conspired, and agreed with other persons known and unknown to the Grand Jury to commit offenses against the United States, namely:

a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and knowing, while conducting and attempting to conduct such financial transactions, that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

2

b.      to knowingly engage and attempt to engage, in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, while knowing that the transaction involved criminally derived property, and which monetary transaction involved criminally derived property of a value great than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957(a).

### MANNER AND MEANS

8.      **PATEL** used the following manner and means, among others, to accomplish the objectives of the conspiracy:

a.      **PATEL** and others posed as federal agents or otherwise legitimate couriers for the purpose of retrieving the proceeds from victims of [Phantom Hacker Scams or "PHS"] wire fraud.

b.      **PATEL** traveled to various locations, sometimes across state lines, to places where victims would hand over the proceeds of the PHS wire fraud to **PATEL** in the form of cash or gold.

c.      **PATEL** sometimes used rental cars or the vehicles of third parties to pick up proceeds from victims.

d.      **PATEL** would sometimes transport PHS fraud scheme proceeds to other members of the conspiracy at various locations, such as at a gas station or parking lot.

e.      **PATEL** sometimes deposited PHS fraud scheme proceeds into his business bank account at Byline Bank.

3

f.      **PATEL** communicated with other co-conspirators about PHS fraud scheme proceeds using secure, encrypted electronic messaging platforms such as WhatsApp.

9.      Throughout the course of this money laundering conspiracy, **PATEL** collected, transported, and transacted in more than $1 million in proceeds from PHS wire fraud victims.

All in violation of Title 18, United States Code, Section 1956(h).

6.      The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

### Background

For several years, the FBI has been investigating international criminal organizations committing wire fraud and money laundering originating from call centers located in India and other South Asian nations targeting primarily elderly Americans.  Sometimes known as "Phantom Hacker Scams" ("PHS"), the criminal organization contacts elderly victims either by calling them, or through a computer spam message that convinces the victim to call the fraudsters. The person on the phone claims to be from a U.S. federal agency and convinces the victim that they have been the victim of a crime such as identity theft, or that their computer has been hacked, and that if money is not paid quickly, the victim could lose even more money or even be prosecuted. After the organization's representative has convinced the victim that he or she must pay money to the organization, the victim is instructed to provide cash or gold to a federal agent who will arrive at the victim's house and take possession of the victim's funds.  The fraudsters tell the victim that their money will be kept safely in the custody of the federal government, such as at a federal reserve bank or other secure location. The supposed federal agent then arrives at the victim's house to take possession of the proceeds, which they then then transport to another representative of the organization in the Chicago area or elsewhere, in exchange for a portion of the victim proceeds.

Members of the conspiracy communicated with each other using WhatsApp, a secure electronic messaging application that allows end-to-end encryption, meaning messages are visible only to the sender and the recipient. WhatsApp also allows users to permanently delete messages, even after they have been sent and delivered.

### Count One

Ankurkumar Bhanubhai Patel is a naturalized citizen of the United States who was residing in Brookfield, Wisconsin.  Patel owned and operated a hotel in Minnesota and a convenience store

4

in Milwaukee, Wisconsin. Patel maintained his personal and business bank accounts at Byline Bank.

Starting in the Spring of 2023, Patel knowingly conspired with others to retrieve and launder proceeds of PHS fraud. Specifically, Patel picked up cash and gold from multiple victims of PHS fraud after receiving instructions via WhatsApp from an individual he knew in India and who used the pseudonym "Montu." Specifically, Montu would send a WhatsApp message to Patel containing the address of the victim, and sometimes a picture of the victim.

Patel would travel to multiple states to pick up cash or gold from the victims of the PHS fraud, including at the victims' homes. Sometimes Patel used rental cars or his wife's vehicle to pick up proceeds from victims. After picking up the proceeds, Patel would record a video of himself counting the cash or the gold, which he would send to Montu as proof the pickup had been completed. Patel would then receive instructions on where to meet other members of the conspiracy. Patel would then travel to various locations to pass on the gold or cash, in hand-to-hand transactions to other, unknown members of the conspiracy. On at least one occasion, Patel deposited victim proceeds into his business bank account at Byline Bank.

Patel conducted or directed others to conduct at least the following pickups at the direction of Montu:

| Date of pick up | Location of pickup | Victim(s) | Ounces of Gold | Price per ounce | Cash | Approximate Value |
|---|---|---|---|---|---|---|
| 5/23/2023 | Unknown | Unknown | 20 | $1,985.50 | --- | $39,710 |
| 7/29/2023 | Mason City, IL | M.R. | --- | --- | $80,000 | $80,000 |
| 8/01/2023 | North Aurora, IL | C.A. & C.A. | 100 | $2,072.50 | --- | $207,250 |
| 8/05/2023 | North Aurora, IL | C.A. & C.A. | 240 | $2,007.96 | --- | $481,910.40 |
| 8/14/2023 | North Aurora, IL | C.A. & C.A. | 220 | $1,993.96 | --- | $438,671.20 |
| 8/15/2023 | Shoreham, MI | M.J. | --- | --- | $70,000 | $70,000 |
| 8/29/20232 | Florence, KY | S.D. | --- | --- | $49,500 | $49,500 |
| 9/11/2023 | Sheboygan, WI | S.W. | --- | --- | $27,500 | $27,500 |
| 9/25/2023 | O'Fallon, MO | A.D. | --- | --- | $144,000 (attempt) | $144,000 (attempt) |
| Total | | | | | | $1,538,541.60 |

Victims C.A. & C.A. suffered a substantial financial hardship as a result of the PHS and subsequent money laundering. The more than $1.1 million they lost represented the entirety of their savings. They also received a $300,000 tax bill from the IRS after liquidating their investments/savings.

5

Patel also recruited other participants to join the conspiracy. According to D.N., Patel recruited him to act as a fake federal agent in the same conspiracy. D.N. was arrested on August 16, 2023, by the Stephenson County, Illinois, Sheriff's Department as part of a sting operation to arrest individuals that had targeted a local victim. Following his arrest, D.N. told deputies that Patel recruited him to pick up cash or gold from unknown subjects. For this work, D.N. would be paid 2% of the value of the proceeds he picked up, plus travel expenses. After being trained by Patel, D.N. was sent to pick up proceeds from multiple locations. D.N. stated that on August 15, 2023, he picked up $70,000 cash from a man in Shoreham, Michigan. After retrieving the proceeds, Patel met with D.N. at a restaurant in Wauwatosa, Wisconsin, where D.N. shared $10,000 of the proceeds with Patel. When D.N. was arrested in Stephenson County, Illinois, he had $60,000 in cash in his possession from the Shoreham, Michigan victim, which he stated was supposed to be delivered to an unknown person.

On September 25, 2023, Patel was arrested in O'Fallon, Missouri attempting to pick up $144,000 in proceeds from victim A.D. Two other passengers in Patel's vehicle were also taken into custody. Patel told HSI agents that he brought the other two friends as a test run to see if they would be willing to take his place in picking up packages from people.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 20 years and $500,000 (or twice the value of the property involved). The charge also carries a mandatory special assessment of $100 and a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 31 of this agreement.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## DISMISSAL OF REMAINING CHARGES

9.      The government agrees to move to dismiss the remaining count of the Indictment in case no. 25-CR-155 at the time of sentencing. In addition, the government agrees to move to dismiss all three charges in case no. 26-CR-75 at the time of sentencing.

## ELEMENTS

10.      The parties understand and agree that in order to sustain the charge of money laundering conspiracy as set forth in Count One of Case No. 25-CR-155, the government must prove each of the following propositions beyond a reasonable doubt:

(1) The conspiracy as charged in the indictment existed; and

(2) The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

## SENTENCING PROVISIONS

11.      The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

12.      The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

13.      The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

14.      The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties

7

may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

15. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

### Relevant Conduct

16. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty. The defendant agrees that the sentencing judge may consider the offense conduct at issue in 26-CR-75 as relevant conduct.

### Base Offense Level

17. The parties agree that the specified unlawful activity from which the laundered proceeds were derived is wire fraud. The base offense level for money laundering conspiracy is 7, plus 16 because the value of the laundered funds is greater than $1.5 million under Sentencing Guidelines Manual § 2B1.1(b)(1)(I). Accordingly, the base offense level of the money laundering conspiracy is 23 under Sentencing Guidelines Manual § 2S1.1(a)(1).

8

## Role in the Offense

18.    Pursuant to Sentencing Guidelines Manual § 3B1.1, the defendant acknowledges and understands that the government will recommend to the sentencing court that a 2-level increase be given for an aggravating role in the offense, as the defendant was an organizer, leader, manager, or supervisor.

## Specific Offense Characteristics

19.    The parties acknowledge that the government will recommend to the sentencing court that a 16-level increase for a loss amount over $1,500,000 is applicable to the specified unlawful activity of wire fraud under Sentencing Guidelines Manual § 2B1.1(b)(1)(I).  The parties acknowledge that the government will recommend a two-level increase is applicable to the specified unlawful activity of wire fraud because it resulted in substantial financial hardship to one or more victims under § 2B1.1(b)(2)(A)(iii).  The parties also acknowledge that the government will recommend to the sentencing court that a two-level increase is applicable to the specified unlawful activity of wire fraud because the offense involved a misrepresentation that the defendant was acting on behalf of a government agency under § 2B1.1(b)(9)(A).  The parties also acknowledge that the government will recommend that a two-level increase is appropriate to the specified unlawful activity of wire fraud because a substantial portion of fraud scheme took place outside of the United States under § 2B1.1(b)(10)(B).

20.    The parties agree to recommend to the sentencing court that a two-level increase is appropriate for the offense of conviction because the defendant was convicted under 18 U.S.C. § 1956 under Sentencing Guidelines Manual § 2S1.1(b)(2)(A)(b).

## Acceptance of Responsibility

21.    The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion

9

recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

## Sentencing Recommendations

22.     Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

23.     Both parties reserve the right to make any recommendation regarding the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

24.     The government agrees to recommend a sentence of no higher than the low end of the guidelines range as calculated by the sentencing court.

## Court's Determinations at Sentencing

25.     The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

26.     The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

27.     The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction.  The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.  If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

28.     The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

### Fine

29.     The parties agree to recommend that no fine be imposed by the sentencing court.

### Special Assessment

30.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

31.     The defendant agrees to pay restitution to the following victims in the following amounts:    $80,000 to Victim M.R.; $70,000 to Victim M.J.; $27,500 to Victim S.W.;

$1,129,830.96[1] to Victims C.A. & C.A.; and $49,500 to Victim M.L. Patel agrees that he owes restitution to any other Victim from whom he directly or indirectly he received money as part of the conspiracy. To the extent the parties are able to identify those additional victims, Patel agrees that he owes those individuals restitution. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation.

### Forfeiture

32.     The defendant agrees that all properties listed in the indictment constitute proceeds of the offense to which he is pleading guilty, or were used to facilitate such offense. The defendant agrees to the forfeiture of these properties and to the immediate entry of a preliminary order of forfeiture. The defendant agrees that he has an interest in each of the listed properties. The parties acknowledge and understand that the government reserves the right to proceed against assets not identified in this agreement.

33.     The defendant consents to the entry of a forfeiture money judgment in the amount of $1,394,541.60 (the "Forfeiture Money Judgment"). The defendant agrees that the amount of the Forfeiture Money Judgment and any payments toward the Forfeiture Money Judgment represent proceeds traceable to the offense as a result of his Money Laundering Conspiracy in violation of Title 18, United States Code, Section 1956(h), and/or substitute assets, and thus are forfeitable to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(b)(1), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p), in any administrative and/or judicial (civil or criminal) proceedings. The defendant consents to the

---

[1] This amount includes $1,127,831 in gold bars retrieved by the defendant, as well as $1,999.96 in target gift cards purchased by victims C.A. and C.A. and provided to members of the conspiracy.

entry of an Order of Forfeiture, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, imposing the Forfeiture Money Judgment.

34.    The defendant agrees to fully assist the government in effectuating the payment of the Forfeiture Money Judgment, by among other things, executing any documents necessary to effectuate any transfer of title to the United States.  The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) proceeding.  The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) forfeiture proceeding.

35.    The defendant represents that he will disclose all of his assets to the United States on the financial statement entitled "United States Department of Justice Financial Statement" (hereinafter, the "Financial Statement") on or before sentencing.  Should undisclosed assets which the defendant owns or in which the defendant has an interest be discovered, the defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of said assets and agrees that said assets shall be forfeited to the United States pursuant to the applicable forfeiture statute(s).

## DEFENDANT'S WAIVER OF RIGHTS

36.    In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the

13

judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

37. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

38. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including

14

but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

39.     Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives his right to appeal his conviction or sentence in this case and further waives his right to challenge his conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term "sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, forfeiture order, and restitution order.  The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines.  This waiver does not extend to an appeal or post-conviction motion based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (3) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (4) a claim that the plea agreement was entered involuntarily.

40.     As to both Case Nos. 25-CR-155 and 26-CR-75, the defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement, as well as the dismissal of Case No. 26-CR-75, constitutes excludable time under the Speedy Trial Act.

## Further Civil or Administrative Action

41.     The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

42.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

43.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

44.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

45.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement. The defendant agrees that A.D., the victim in Case No. 26-CR-75, retains the same rights as any other victim in this case.

16

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

46.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct if the defendant commits a federal, state, or local offense punishable by a term of imprisonment exceeding one year or violates a material term of the plea agreement.   The defendant further acknowledges and understands that the government's agreement to dismiss any charges is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges (in either or both cases) and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

47.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

17

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 5/28/26

ANKURKUMAR BHANUBHAI PATEL
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 5/28/26

NICOLE MASNICA
PATRICK CAMPBELL
Attorneys for Defendant

For the United States of America:

Date: 5/28/26

PETER J. SMYCZEK
Assistant United States Attorney

18